UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

EXCELLENCY INVESTMENT REALTY TRUST, INC. and
DAVID D. MLADEN,

Defendants.

No. 3:08-cv-1583 (C  )
308CV01583
JBA

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## PRELIMINARY STATEMENT

1. This case involves a fraudulent market manipulation scheme in which Defendants Excellency Investment Realty Trust, Inc. ("Excellency"), a publicly-traded company, and David D. Mladen ("Mladen"), Excellency's president, chief executive officer and majority shareholder, engaged in a number of transactions designed to artificially inflate the price of Excellency common stock. During the period from at least July 2006 through September 2006 (the "relevant period"), Mladen, on behalf of Excellency, engaged in a market manipulation scheme to defraud Excellency investors by artificially increasing the price of Excellency stock by purchasing Excellency stock at progressively higher prices and executing wash or match trades in order to create the appearance of an active market for Excellency shares. Mladen conducted the trading in an account that was substantially owned by Excellency and placed the trades in his capacity as an officer and director of Excellency. By the time the scheme ended, Mladen and Excellency had systematically manipulated the stock price of Excellency from approximately $8 on July 25, 2006

to approximately $24.35 per share on September 22, 2006.

2. By engaging in the conduct alleged in this Complaint, Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

3. Unless restrained and enjoined, the Defendants are likely to commit further violations in the future. The Commission seeks entry of a permanent injunction prohibiting the Defendants from further violations of the relevant provisions of the federal securities laws. The Commission also seeks against Defendant Mladen the imposition of civil monetary penalties and entry of an order barring Defendant Mladen from serving as an officer or director of a public company.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Exchange Act [15 U.S.C. §§ 78u and 78aa]. The Commission seeks a permanent injunction pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d)], the imposition of a civil monetary penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and the imposition of an officer and director bar pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §§ 78u(d)(2)]. Excellency transacts business within the District of Connecticut.

## DEFENDANTS

5. Mladen, age 53, is a resident of Scarsdale, New York. Mladen is the president, chief executive officer, and majority shareholder of Excellency.

6. Excellency Investment Realty Trust, Inc. is a Maryland corporation headquartered in New York City, New York, with an office in Hartford, Connecticut. Excellency's common

stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78j(b)]. Shares of Excellency common stock are traded on the OTC Bulletin Board. Prior to September 2006, Excellency was known as Gift Liquidators, Inc. ("GFTL").

## OTHER PARTY

7. Excellency Investment Realty Trust, L.P. I ("Excellency Trust"), a Delaware limited partnership located in Hartford, Connecticut, was formed in October 2005 as a subsidiary of Excellency. Excellency holds an 80 percent interest and Mladen holds a 17 percent interest in Excellency Trust.

## DETAILED ALLEGATIONS

### Background

8. In September 2005, Mladen became the president and chief executive officer of GFTL.

9. In September 2006, GFTL merged with Excellency, which was a wholly owned subsidiary organized specifically for purposes of the merger. As a result of the merger between GFTL and Excellency, the surviving company and successor filer became known as Excellency (hereinafter GFTL and Excellency are collectively referred to as "Excellency").

10. After the merger between the two companies in 2006, Mladen continued as the president and chief executive officer of Excellency.

11. During the relevant period, Mladen was a majority shareholder of Excellency.

12. In or about October 2005, Excellency, through Mladen, formed Excellency Investment Realty Trust, L.P. I ("Excellency Trust") as a subsidiary of Excellency. Excellency held an 80 percent interest and Mladen held a 17 percent interest in the Excellency Trust.

### Excellency Seeks Financing

13.     In or about early July 2006, Excellency, through Mladen, attempted to obtain equity financing for Excellency from Dutchess Advisors, LLC ("Dutchess"), a Boston, Massachusetts company in the business of providing capital to growth companies.

14.     On or about July 7, 2006, Dutchess informed Mladen via e-mail that as a prerequisite to obtaining financing from Dutchess, Excellency's stock price was required to remain above $5.00 per share.

### The Manipulation Scheme

15.     On or about June 16, 2006, Excellency opened a brokerage account, through Mladen, at Rafferty Capital Markets, LLC ("Rafferty"), a registered broker-dealer, under the name "Excellency Investment Realty Trust LP I." Mladen had sole trading authority over the Rafferty account. Mladen placed trades in the Rafferty account, for the benefit of Excellency, via Rafferty's online proprietary trading system, which Mladen accessed via computer.

16.     During July 2006, Mladen noticed that there was very little interest in Excellency stock and he wanted to show shareholders of Excellency that others were interested in Excellency stock. Shortly after opening the Rafferty account, Excellency, through Mladen, began entering online orders to buy Excellency stock in the Rafferty account using a computer.

17.     On July 25, September 11, and September 13, 2006, Mladen placed a total of 12 online purchase orders for Excellency stock at progressively higher prices, which were executed at progressively higher prices. For example, at 9:52 a.m. on September 11, 2006, Mladen placed an online order to purchase 100 shares of Excellency at $8 per share, which was executed three minutes later at $8 per share. At 10:01 a.m. on September 11, Mladen placed a second online

order to purchase 100 shares of Excellency at $8.75 per share, which was executed at 11:00 a.m. at $8.75 per share. At 10:36 a.m. on September 11, Mladen placed a third online order to purchase 100 shares of Excellency at $9 per share, which was executed at 11:00 a.m. at $9 per share.

18. By engaging in these purchases at progressively higher prices, Mladen compromised the integrity of the market by creating the false appearance of genuine trading activity for Excellency securities. Mladen's trading on July 25, September 11, and September 13, 2006, accounted for the majority of shares traded on those days and caused the price of Excellency stock to increase from $8.00 to $11.50 per share.

19. To further enhance the appearance of an active market created by the executed purchase orders, Mladen placed an additional approximately 22 online purchase orders for Excellency stock, most of which were entered at progressively higher prices. These 22 purchase orders were either cancelled or expired unexecuted. For example, at 12:45 p.m. on August 22, 2006, Mladen placed an order to purchase 100 shares of Excellency at $7.75 per share in his account at Rafferty using his computer. At 12:58 p.m. on August 22, Mladen placed a second order to purchase 100 shares of Excellency at $8.05 per share in his account at Rafferty using his computer. At 1:22 p.m. on August 22, Mladen placed a third order to purchase 100 shares of Excellency at $8.10 per share in his account at Rafferty using his computer. These orders were either cancelled or expired unexecuted.

20. To further enhance the appearance of an active market for Excellency stock, between September 14 and September 22, 2006, Excellency, through Mladen, systematically manipulated the stock price of Excellency by engaging in approximately eight wash or matched

trades, which included placing corresponding buy and sell orders or corresponding sell and buy orders for identical or substantially identical prices and amounts of Excellency stock at or about the same time.

21. In each of these wash or matched trades, Excellency, through Mladen, was both the buyer and seller, with no change in beneficial ownership of the Excellency shares. As with the scheme set forth above relating to the purchase orders for Excellency at progressively higher prices, Mladen's wash and match trading scheme was designed to create the false appearance of an active and rising market for Excellency stock, of which Mladen was a majority shareholder.

22. For example, on September 18, 2006 at 3:11:00 p.m., Mladen placed an online order to buy 100 shares of Excellency at $18.25 per share. Nine seconds later, at 3:11:09 p.m., Mladen placed an order to sell 100 shares of Excellency at $18.25. Mladen's buy order was executed against his sell order one second later, at 3:11:10 p.m. at $18.25 per share.

23. By engaging in these wash or matched trades, Excellency, through Mladen, compromised the integrity of the market by creating the appearance of genuine trading activity for Excellency securities. In fact, Mladen's wash or matched trades always accounted for the majority of shares traded on those days.

24. Mladen's manipulative trading had a direct impact on the price of Excellency stock. For example, on nine of the ten days that Mladen bought or sold Excellency stock, his trades represented the closing price of Excellency stock. As such, Mladen's manipulative wash or matched trading caused the price of Excellency to increase from $11.70 per share on September 14, 2008 to $24.35 per share on September 21, 2006. Overall, between July 25 and September 21, 2006, Mladen accounted for, on average, 90.33 percent of the market for

Excellency.

25. On or about September 22, 2006, Mladen was warned by Rafferty that his trading was inappropriate. Nevertheless, Mladen continued to place orders to buy Excellency stock after the warning.

26. On or about September 22, 2006, Rafferty personnel told Mladen to transfer his account to another brokerage firm and his account was then closed by Rafferty.

27. After Mladen ceased his manipulative trading, the price of Excellency fell from $24.35 per share on September 21, 2006 to $10.01 per share on October 6, 2006.

28. Mladen's manipulative trading caused investors in Excellency stock to pay the artificially inflated price and thus, caused investors to pay more than they should have for the stock.

29. Mladen knew, or was reckless in not knowing, that his trading would cause harm to buyers of Excellency stock.

30. During an interview with Commission staff on June 21, 2007, Mladen admitted that he placed the trades referenced above in order to create the appearance of interest in Excellency stock.

## CLAIM FOR RELIEF
### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5)

31. The Commission repeats and incorporates by reference the allegations in paragraphs 1-30 of the Complaint as if set forth fully herein.

32. Defendants, directly or indirectly, acting intentionally, knowingly or recklessly, by the use of means or instrumentalities of interstate commerce or of the mails, in connection with

the purchase or sale of securities: (a) have employed or are employing devices, schemes or artifices to defraud; (b) have made or are making untrue statements of material fact or have omitted or are omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) have engaged or are engaging in acts, practices or courses of business which operate as a fraud or deceit upon certain persons.

33.     As a result, Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE,** the Commission requests that this Court:

A.     Enter permanent injunctions restraining Defendants and each of their agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. '240.10b-5];

B.     Order Defendant Mladen to pay appropriate civil monetary penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

C.     Impose an officer and director bar against Defendant Mladen pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §§ 78u(d)(2)]; and

D.     Award such other and further relief as the Court deems just and proper.

Plaintiff hereby requests that this matter be tried before a jury.

Respectfully submitted,

*Deena Bernstein by JBH*
Deena R. Bernstein (CT-phv02906)
Senior Trial Counsel
Securities and Exchange Commission
33 Arch St., 23rd Floor
Boston, MA 02110
(617) 573-8813 (phone)
(617) 573-4590 (fax)
bernsteind@sec.gov

Louis A. Randazzo (CT-25095)
Senior Enforcement Counsel
Securities and Exchange Commission
33 Arch St., 23rd Floor
Boston, MA 02110
(617) 573-8985 (phone)
RandazzoL@sec.gov

*John B. Hughes*
John B. Hughes (CT 05289)
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, CT 06510
(203) 821-3700 (phone)
(203) 773-5373 (fax)

October 16, 2008

Attorneys for Plaintiff
**U.S. SECURITIES AND EXCHANGE COMMISSION**

9